UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SOLANGE D CHADDA,                                    :

                          Plaintiff,                 :

          -against-                                  : **REPORT AND RECOMMENDATION**

BILL BADGETT and MIKE ANIFANTIS,                     :          14-CV-3459 (LAK) (KNF)

                          Defendants.                :
-------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE

          The plaintiff, proceeding pro se, commenced this action against Bill Badgett and Mike

Anifantis ("Anifantis") alleging "violation of civil rights," including her First Amendment rights,

"from 2012 to present."  The plaintiff asserts that the events giving rise to her claims occurred in

New York, Miami and Philadelphia, and she is a resident "at Belmont," "as well, as a resident of

Philadelphia."  She asserts jurisdiction "under 28 U.S.C. § 1854," and that "Anifantis, Calder

Race track is a resident of Miami Gardens, Florida."  The plaintiff alleges that from 2012 to the

present she was "raped 5 times," "under the orders of Mike Anifantis," and she was "treated as

[a] slave."  She maintains that she lost her vocal cords because her "rapist" tried to strangle her

with a chain and she still has nightmares.  According to the plaintiff, she "worked under cover

with the federal Bureau of New York."  She asserts that the defendants threatened to kill her and

her horses if she "talked."  The plaintiff maintains that "[t]he Bureau was aware of the situation

and my suffering and my life put in danger, but they told me, it takes time to crackdown these

people and the cartel."  The plaintiff alleges that "[a]t that time, I was violated, I was a slave

collecting information for the bureau and I didn't have any Rights as a woman and as an

American citizen.  The rapist Nester Cascallares under the orders of Mike Anifantis, partner with the bonanno Family in New York and the boss Badgett inc of the Bonnamo Family, thought they were intouchable [sic]."  The plaintiff asserts that the defendants "got into my email, my email was frozen then they underfroze my email, and now I cannot get into it.  My privacy and my first amendment are violated.  They have access to my life and the daily operations."  The plaintiff asserts that the defendants "started the killing two horses (under cover), one vet And the other one got into a very bad accident, bearly [sic] made it.  I am a slave with no rights."  Furthermore, the defendants are responsible for "[e]stortion" (sic) and "intimidation."

Before the Court is a motion to dismiss the complaint, pursuant to Rules 12(b)(2), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, made by Anifantis.  The plaintiff opposes the motion.[1]

***Defendant's Contentions***

Anifantis contends that no personal jurisdiction exists over him.  According to Anifantis, the plaintiff alleged that he is a resident of Florida and she failed to allege any jurisdictional facts to support the court's exercise of personal jurisdiction over him.  Moreover, the defendant contends that the plaintiff failed to allege when or where the acts comprising her claims occurred or that he committed any tortuous act in New York.  In support of his motion, Anifantis submitted his declaration stating that he has no contacts with the state of New York or minimum contacts sufficient to confer personal jurisdiction since he: (a) is a Florida resident; (b) has been employed by Calder Race Course, located in Miami Gardens, Florida, from 1979 until 1988, and from 2001 until the present; (c) has no business operations in New York; (d) has no offices,

---

[1]  The Court interprets the plaintiff's "MOTION TO STRIKE DEFENDANT MOTION TO DISMISS" as the plaintiff's opposition to the defendant's motion to dismiss.

2

employees, representatives or agents within New York; (e) has not availed himself of the benefits of conducting business under the laws of New York; (f) does not own or use any real property in New York; (g) has no bank accounts in New York; (h) does not have a telephone listing in New York; (i) has never been authorized, licensed or registered to do business in New York, and pays no taxes in New York; and (j) has not been physically present in New York since 2007, when he attended the Belmont Stakes as a spectator.

The defendant asserts that no subject matter jurisdiction exists in this action, or, alternatively, the plaintiff failed to state a claim for relief. He contends that the plaintiff failed to identify any federal law at issue in this case. According to the defendant, other than alleging that her civil rights have been violated, the plaintiff failed to identify those rights. Even assuming that the plaintiff alleged the existence of a federal question sufficiently, she did not allege any elements of a civil rights claim. Although the plaintiff asserted a violation of her First Amendment rights, she did not specify whether she is invoking her right to freedom of expression or religious freedom, or that the defendant is a state actor.

### *Plaintiff's Contentions*

The plaintiff contends that Anifantis is an employee of "the corporation Calder Race track," which is "a division of Churchills Downs," and does business in New York. The plaintiff asserts that Anifantis "does business with [N]ew York trainers all the time and decided who comes to Calder Race Track or not. New York comes to Calder Race track in Miami Florida to deal with Mike Anifantis, he Doesn't have to go there." According to the plaintiff, "[t]he reason that the complaint was filed in New York," is "because at that time plaintiff got t[w]o addresses New York and Philadelphia." The plaintiff contends that she was raped "on the ground of Calder Track, run by Mike Anifantis," who ignored her injuries. The plaintiff asserts her

Thirteenth Amendment rights were violated because she was treated as a slave, and she "was discriminated by Calder Race track because of her gender a woman Violation of Civils [sic] Rights act of 1964." In her opposition to the motion, the plaintiff asserted violations of 42 U.S.C. § 1983, the Civil Rights Act of 1964 and the Thirteenth Amendment to the United States Constitution. No affidavit was filed in opposition to the defendant's motion. On the same day she opposed the instant motion, the plaintiff filed an amended complaint, adding two defendants to her complaint: (1) "Calder Race track corporation of Churchills Downs"; and (2) "Nestor Cascallares the rapist the underdog for the corporation Calder Race Track/division of Churchills Downs."

### *Defendant's Reply*

The defendant contends that, in her opposition to his motion, the plaintiff did not present any facts showing why this court has personal jurisdiction over him, and the undisputed record demonstrates that he has no contacts with New York and conducts no business activity in New York. The defendant maintains that the plaintiff's New York residence is insufficient to confer jurisdiction over him. Furthermore, the plaintiff's claims are not cognizable in this court, and she did not identify any federal law conferring federal jurisdiction over her claims. The defendant contends that no private right of action exists under the Thirteenth Amendment, and "there is no individual liability under the Civil Rights Act of 1964." According to the defendant, since the plaintiff did not assert a federal claim, no jurisdiction exists over the remaining state-law causes of action for alleged rape and extortion.

### *Rule 12(b)(1) Lack of Subject Matter Jurisdiction*

"The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A party may assert a

defense of lack of subject matter jurisdiction by motion.  See Fed. R. Civ. P. 12(b)(1).  "Where,

as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on

other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must

dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and

objections become moot and do not need to be determined.'"  Rhulen Agency, Inc. v. Ala. Ins.

Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 1350 (1969)).  A pro se litigant's submissions "must be

construed liberally and interpreted to raise the strongest arguments that they *suggest*.'"

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks and

citation omitted).  On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure, making a facial attack on the court's jurisdiction, the non-conclusory factual

allegations in the complaint, unless contradicted by evidence, are taken as true and all reasonable

inferences drawn from those factual allegations are construed in favor of the plaintiff.  See

Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  "On a Rule

12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve

the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as

affidavits, and if necessary, hold an evidentiary hearing."  Zappia Middle East Constr. Co. Ltd.

v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  "Dismissal for lack of subject

matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim

is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or

otherwise completely devoid of merit as not to involve a federal controversy.'"  Steel Co. v.

Citizens for a Better Env't, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010 (1997) (quoting Oneida

Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666, 94 S. Ct. 772, 777 (1974)).

The defendant does not make a factual challenge to subject matter jurisdiction; rather, his challenge is facial, in which case factual allegations in the complaint are presumed to be true and the complaint is reviewed to ascertain if the plaintiff alleged sufficiently a basis for subject matter jurisdiction. See Amidax Trading Grp., 671 F.3d at 145. The plaintiff filed her complaint by using a "Complaint" form issued by the Clerk of Court. In the section entitled "Basis for Jurisdiction," the plaintiff marked "Federal Questions" and "violation of civil rights" as the bases for federal jurisdiction. The plaintiff asserted that her "complaint is under the jurisdiction of New York, under 28 U.S.C[. §]1854." However, no such federal statute exists. Given that the plaintiff alleged that she "was treated as a slave," it might be that she meant to invoke 18 U.S.C. § 1584, a criminal statute prohibiting, inter alia, the sale of persons into involuntary servitude. However, 18 U.S.C. § 1584 does not provide for a private right of action, and the Supreme Court has not yet inferred a private right of action for injuries caused by violations of this criminal provision. Cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190, 114 S. Ct. 1439, 1455 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone," and "we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions."); see Buchanan v. City of Bolivar, 99 F.3d 1352, 1357 (6th Cir. 1996) ("Although plaintiff can not recover a private remedy under § 1584, the Supreme Court has deemed the term 'involuntary servitude' in the Thirteenth Amendment and § 1584 to be indistinguishable."); contra Manliguez v. Joseph, 226 F. Supp. 2d 377, 384 (E.D.N.Y. 2002) (Finding "that there exists a private civil cause of action under section 1584 based on involuntary servitude.").

The plaintiff asserted, in a conclusory fashion, "violation of the first amendment" and "violation of civil rights," but failed to provide any factual details to identify or explain those

violations.  The plaintiff also made the conclusory allegation that she was deprived of her

"Rights as a woman and as an American citizen," but failed to make any other allegations that

would shed any light on how she was deprived of her rights "as a woman and as an American

citizen," such that would suggest a potential federal basis for her claims based on gender or

nationality.

In her opposition to the instant motion, the plaintiff asserted that her claims are based on

violations of 42 U.S.C. § 1983, the Civil Rights Act of 1964 and the Thirteenth Amendment to

the United States Constitution.  The complaint is devoid of allegations tending to show that any

defendant is a state actor, or that the plaintiff was employed by any defendant or that any

defendant receives federal assistance.  Thus, upon review of the complaint and taking non-

conclusory factual allegations as true, the Court finds that the complaint is devoid of any factual

allegations suggesting that a federal controversy is involved under 42 U.S.C. § 1983 or the Civil

Rights Act of 1964.

However, the plaintiff's non-conclusory allegation that she "was treated as a slave" by

the defendants, indicates that the plaintiff invoked her right, under the Thirteenth Amendment to

the United States Constitution, not to be subjected to slavery and involuntary servitude.  Section

1 of the Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as a

punishment for crime whereof the party shall have been duly convicted, shall exist within the

United States, or any place subject to their jurisdiction."  U.S. Const. amend. XIII, § 1.  Section 2

of the Thirteenth Amendment provides: "Congress shall have power to enforce this article by

appropriate legislation."  U.S. Const. amend. XIII, § 2.  The defendant contends that "there is no

private right of action under the Thirteenth Amendment," making citation to "*Jendrzejczak v.*

*Williams*, No. 6:13-CV-1239, 2014 WL 2533041, at *8 (N.D.N.Y. June 5, 2014) ("No private

right of action has been found under the Thirteenth Amendment itself.") (citing *City of Memphis v. Greene*, 451 U.S. 100, 128 (1981))."

The Jendrzejczak court made citation to the Supreme Court's decision in City of Memphis in support of its statement that "[n]o private right of action has been found under the Thirteenth Amendment itself." 2014 WL 2533041, at *8. However, City of Memphis does not hold or support the proposition that "there is no private right of action under the Thirteenth Amendment." The issue in City of Memphis was "whether a decision by the city of Memphis to close the north end of West Drive, a street that traverses a white residential community, violated § 1 of the Civil Rights Act of 1866, Rev. Stat. § 1978, 42 U.S.C. § 1982, or the Thirteenth Amendment to the United States Constitution." City of Memphis, 451 U.S. at 102, 101 S. Ct. 1584, 1587. The Supreme Court analyzed the alleged violation of the Thirteenth Amendment, id. at 124-29, 101 S. Ct. at 1598-1601, holding "that the impact of the closing of West Drive on nonresidents of Hein Park is a routine burden of citizenship; it does not reflect a violation of the Thirteenth Amendment." Id. at 129, 101 S. Ct. at 1601. Thus, the Supreme Court did not hold that no private right of action exists under the Thirteenth Amendment; rather, it suggested the contrary proposition by analyzing the Thirteenth Amendment violation claim on the merits.

The court in Jendrzejczak also made citation to Alma Soc'y Inc. v. Mellon, 601 F.2d 1225 (2d Cir. 1979), quoting the following language: "The [Supreme] Court has never held that the Amendment itself, unaided by legislation . . . reaches the 'badges and incidents' of slavery as well as the actual conditions of slavery and involuntary servitude." Jendrzejczak, 2014 WL 2533041, at *8 (quoting Alma Soc'y Inc., 601 F.2d at 1237). In Alma Soc'y Inc., the issue was "whether adopted persons upon reaching adulthood . . . are constitutionally entitled, irrespective of a showing of cause, to obtain their sealed adoption records, including the names of their

8

natural parents." 601 F.2d at 1227. More specifically, the court addressed the issue whether the Thirteenth Amendment, "in abolishing slavery and involuntary servitude [was] also intended to abolish five 'necessary incidents of slavery.'" Id. at 1236-37. The Alma Soc'y Inc. court observed that the Supreme Court "has directly invoked the Amendment only to strike down state laws imposing the condition of peonage," id. at 1237, and "has never considered that the 'badges or incidents' went beyond those listed in the 1866 Civil Rights legislation, Viz., a lack of 'the same right to make and enforce contracts, to sue, be parties, give evidence, and to inherit, purchase, lease, sell and convey property, as is enjoyed by white citizens.'" Id. at 1238 (citation omitted). However, subsequent to the 1979 decision in Alma Soc'y Inc., the Supreme Court noted that the exercise of Congress's "authority created by § 2 of the Thirteenth Amendment . . . to abolish both the conditions of involuntary servitude and the 'badges and incidents of slavery[,] is not inconsistent with the view that the Amendment has self-executing force." City of Memphis, 451 U.S. at 124-25, 101 S. Ct. at 1599. The Supreme Court "left open the question whether § 1 of the Amendment by its own terms did anything more than abolish slavery," finding that "a review of the justification for the official action challenged in this case demonstrates that its disparate impact on black citizens could not, in any event, be fairly characterized as a badge or incident of slavery." Id. at 125-26, 101 S. Ct. at 1599. That the Supreme Court never held that the Amendment itself, unaided by legislation, reaches the "badges and incidents" of slavery as well as the actual conditions of slavery and involuntary servitude, does not mean that the Supreme Court held that the Amendment does not reach the "badges and incidents" of slavery as well as the actual conditions of slavery and involuntary servitude. Thus, Alma Soc'y Inc. does not support the defendant's argument that no private right of action exists under the Thirteenth Amendment.

Moreover, in this circuit, it is possible to assert a claim under Section 1 of the Thirteenth Amendment.  See McGarry v. Pallito, 687 F.3d 505, 509 (2d Cir. 2012) ("We . . . hold that [the] complaint plausibly states a claim under the Thirteenth Amendment."); compare with Adickes v. S.H. Kress & Co., 398 U.S. 144, 224 n.29, 90 S. Ct. 1598, 1638 n.29 (1970) ("A private person can violate or infringe a constitutional right when . . . his wholly private conduct violates some constitutional prohibition of such conduct, e.g., s. 1 of the Thirteenth Amendment.").  Thus, absent the Supreme Court's or Second Circuit's holding to the contrary, the defendant's argument that the plaintiff's claim that she was treated as a slave is not cognizable because "there is no private right of action under the Thirteenth Amendment," lacks merit.  While the plaintiff's allegation that she was treated as a slave might be insufficient to state a claim for which relief may be granted, that insufficiency does not bar the finding of subject matter jurisdiction based on federal question.  The Court finds that it has subject-matter jurisdiction, pursuant to 28 U.S.C. § 1331, and dismissing the complaint on the ground of lack of subject-matter jurisdiction is not warranted because the plaintiff's allegations are not completely devoid of facts that present a federal controversy.

### Rule 12(b)(2) Lack of Personal Jurisdiction

A party may assert the defense lack of personal jurisdiction by a motion.  See Fed. R. Civ. P. 12(b)(2).

> In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.  If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.  Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial.  But

until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.

Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (internal citations omitted).

Three requirements must be satisfied for a federal court to exercise personal jurisdiction: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective. The available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k)"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012).

> (1) In General. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or (C) when authorized by a federal statute. (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

> Fed. R. Civ. P. 4(k).

Before Rule 4(k)(2) may be invoked, the plaintiff has the burden of showing that the defendant is beyond the reach of any state's jurisdiction. See Tamam v. Fransbank Sal, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010) ("Plaintiffs have not certified that Defendants are not subject to jurisdiction in any other state."); but see Flag Co. v. Maynard, 376 F. Supp. 2d 849, 853 (N.D. Ill. 2005) (burden is not on the plaintiff to show that the defendant is not subject to the jurisdiction of any

11

state; rather, "it is defendant's burden to name another state in which the suit could proceed if he wishes to preclude the use of Rule 4(k)(2)," and if the defendant fails to do so, "the second requirement of Rule 4(k)(2) is satisfied.").

The defendant does not contend that the plaintiff's service of process upon him was procedurally improper.  He challenges the statutory basis for personal jurisdiction over him, that would render the plaintiff's service effective.  No discovery has taken place; therefore, the plaintiff's jurisdictional allegations in the complaint must be taken as true, namely that Anifantis is a Florida resident, employed by Calder Race Track in Miami Gardens, Florida.  Given that Anifantis is a Florida resident, Rule 4(k)(2) does not apply.  Anifantis is not a party joined under Rule 14 or 19 and the plaintiff did not assert any federal statute authorizing personal jurisdiction under Rule 4(k)(C).  The plaintiff relies on personal jurisdiction under Rule 4(k)(1)(A), which the defendant challenges arguing that he is not subject to the jurisdiction of a New York court of general jurisdiction.

"A district court's personal jurisdiction is determined by the law of the state in which the court is located.  <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 76 (2d Cir. 2010).  Here, New York law determines whether personal jurisdiction over Anifantis is available in New York, the state in which this district court is located.

> There are two types of personal jurisdiction: general and specific.  General jurisdiction is authorized where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  A court asserts "general jurisdiction" over a defendant when the court is permitted to "hear any and all claims against" that defendant. "Specific jurisdiction," however, "depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  Such

12

jurisdiction is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"

Licci, 673 F.3d at 60 n.9 (internal citations omitted).

New York's specific jurisdiction, codified in its long-arm statute provides, in pertinent part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." New York Civil Practice Law and Rules § 302(a)(1). "[I]n determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Licci, 673 F.3d at 60 (quotation marks and alteration omitted).

> If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. This analysis has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. With respect to minimum contacts, [the court] must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. . . . In determining the strength of the contacts under both section 302(a)(1) and the Due Process Clause, [the court] look[s] to the totality of Defendant['s] contacts with the forum state. With respect to [the court's] analysis of reasonableness as part of the due process inquiry, [the court] ask[s] whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case.
>
> Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010)(internal citations omitted).

"By this single act statute . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's

13

activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 166-67 (2006) (quotation marks and citation omitted).  Under New York law, "the minimum contact [is characterized] as being 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37-38 (1967) (citation omitted).  However, "New York's long-arm statute 'does not confer jurisdiction in every case where it is constitutionally permissible.'" Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 512, 851 N.Y.S.2d 381, 388 (2007) (citation omitted).

The allegations in the complaint that Anifantis is a: (a) Florida resident, employed by Calder Race Track in Florida; and (b) "partner with the bonanno Family in New York," without more, are not sufficient to make Anifantis subject to general jurisdiction because no other allegations have been made by the plaintiff that would make Anifantis's contacts with New York so continuous and systematic as to render him essentially at home in New York.

With respect to specific long-arm jurisdiction, the complaint does not allege that Anifantis transacts any business in New York or that any cause of action asserted in the complaint arises from any business transaction in New York.  Although the plaintiff alleged that Anifantis is a "partner with the bonnano Family in New York," the complaint is devoid of any allegations about the nature of Anifantis's affiliation "with the bonnano Family in New York" and what, if any, business transactions are involved.  The plaintiff asserted, in her memorandum in opposition to the motion, that Anifantis "represents Churchills Downs.  Calder Race track is owned by Churchills Downs," and that she "has been raped 5 times on the ground of Calder Race Track, run by Mike Anifantis."  However, she did not submit any affidavit in opposition to

14

the defendant's motion, and the additional allegations, asserted in the plaintiff's memorandum,

even if considered, are insufficient to cure the deficiencies in the complaint concerning personal

jurisdiction over Anifantis. Accordingly, the Court finds that no personal jurisdiction exists over

Anifantis.

***Rule 12(b)(6) Failure to State a Claim***

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its face." A
> claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged.
>
> Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell
> Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

"Conclusory allegations that the defendant violated the standards of law do not satisfy the

need for plausible factual allegations." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d

111, 191 (2d Cir. 2010) (citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1965). On a

motion pursuant to Rule 12(b)(6), all facts alleged in the complaint are assumed to be

true and all reasonable inferences are drawn in the plaintiff's favor. See Interpharm, Inc.

v. Wells Fargo Bank, Nat'l Ass'n, 655 F.3d 136, 141 (2d Cir. 2011).

As discussed above, although the plaintiff asserts, in a conclusory fashion,

"violation of the first amendment" and "violation of civil rights," the complaint is devoid

of any factual allegations about the nature of those violations or anything related to the

alleged violations. Thus, the plaintiff failed to state a claim for relief respecting a

"violation of the first amendment," and a "violation of civil rights." The plaintiff also

contends that her claims are based on violations of 42 U.S.C. § 1983, the Civil Rights Act

of 1964 and the Thirteenth Amendment to the United States Constitution. As discussed

above, the complaint is devoid of any allegations suggesting that any defendant is a state actor or that any protections guaranteed by the Civil Rights Act of 1964 apply to the plaintiff in any manner.  Moreover, although the plaintiff asserted that she was treated as a slave, she failed to allege any factual detail in connection with that claim.  Although that non-conclusive allegation is sufficient to confer subject-matter jurisdiction, it is not sufficient, without more, to state a claim to relief that is plausible on its face.  The Court finds that the plaintiff failed to state a claim upon which relief can be granted.

***Amendment of the Complaint (Docket Entry No. 17)***

On September 18, 2014, when the plaintiff opposed the defendant's motion, she also filed an amended complaint, adding two defendants, Calder Race Track and Nestor Cascallares.  See Docket Entry No. 17.  The plaintiff's amended complaint was untimely because it was not made within the time permitted by Rule 15(a)(1) of the Federal Rules of Civil Procedure, and the plaintiff did not seek or obtain an extension of time to amend her pleading as a matter of course.  The Court interprets the plaintiff's filing of the amended complaint, Docket Entry No. 17, as a motion for leave to amend the complaint, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

Once the time for amending pleadings as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City

16

of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

The plaintiff contends that she "amends this complaint by adding the new defendants [who] are part of the Complaint but may be not enough explicit," namely: (1) Calder Race Track, a corporate entity on whose grounds the plaintiff allegedly suffered her injuries; and (2) Nestor Cascallares, "the rapist" who "is a sub employee indirectly of Calder Race track."  In her amended complaint, the plaintiff alleges "sexual assault and estortion [sic]."  However, sexual assault and extortion are criminal offenses that cannot be prosecuted in a civil action such as this one.  The plaintiff's proposed amended complaint does not cure factual deficiencies in the original complaint, since it appears to focus solely on the alleged sexual assault and extortion.  Since the plaintiff's proposed amended complaint is devoid of any non-conclusory allegations sufficient to state a claim to relief that is plausible on its face, granting her request for leave to amend the complaint is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the defendants' motion to dismiss the complaint, Docket Entry No. 8, be granted and the complaint be dismissed in its entirety; (2) the plaintiff's motion for leave to amend the complaint, Docket Entry No. 17, be denied; and (3) all the remaining motions be denied as moot.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to

objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the

chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, New York,

New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425,

New York, New York, 10007.  Any requests for an extension of time for filing objections

must be directed to Judge Kaplan.  ***Failure to file objections within fourteen (14) days***

***will result in a waiver of objections and will preclude appellate review.***  See Thomas v.

Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir.

2003).

Dated: New York, New York       Respectfully submitted,
      December 19, 2014

                Kevin Nathaniel Fox

                KEVIN NATHANIEL FOX

Copy mailed to:         UNITED STATES MAGISTRATE JUDGE

Solange D. Chadda